## WILLEFORD v. BELL.

### Sac. No. 151; May 28, 1897.

#### 49 Pac. 6.

**Mining Claim—Location.**—If One First Discovering a Vein or lode does not make a valid location thereon, another may make such location.[1]

**Mining Claim—Distinctly Marking.**—Location of a mining claim is invalid if not "distinctly marked on the ground, so that its boundaries can be readily traced," as required by Revised Statutes of the United States, section 2320.[2]

**Mining Claim—Proof of Notice.**—It Being Provided by Revised Statutes of the United States, section 2324, only what "all records of mining claims . . . . shall contain," it is not necessary, in the absence of local rules or customs, for one asserting a location to prove the notice posted on the claim, but merely the recorded notice, which he may do by a copy.

**Witnesses—Cross-examination.**—Permitting a Witness to be Asked on cross-examination whether he had not, at the adjournment after his examination in chief, made a certain statement to a certain person, if error, is harmless, there having been no attempt to prove that his answer, "No," was not the truth.

**Evidence—Waiver of Objection.**—Objection That Evidence was inadmissible, not having been made when it was offered, is waived.

APPEAL from Superior Court, Placer County; J. E. Prewett, Judge.

Action by C. A. Willeford against A. O. Bell. Judgment for plaintiff. Defendant appeals. Affirmed.

---

[1] Cited in note in 139 Am. St. Rep. 162, on discovery of mineral in mining claims and rights of locators prior thereto.

[2] Cited and followed in Holdt v. Hazard, 10 Cal. App. 445, 102 Pac. 541, where the court say a judgment for the possession of a mining claim is not void for uncertainty of description, if the description "is in accordance with the notices posted, which constitute a part of the markings of the claims, which, taken with other data contained therein, is sufficient to enable one to identify the property, with reasonable certainty."

B. F. Myres and Ben P. Tabor for appellant; John M. Fulweiler for respondent.

BELCHER, C.—This is an action to quiet the plaintiff's title to a quartz-mining claim, which is described by metes and bounds, and as being fifteen hundred feet long and six hundred feet wide, and called the "Starlight Quartz Mine." The complaint is in the usual form, averring that the plaintiff is the owner and in possession of the said mine, and that the defendant claims some right, interest and estate therein, but that he has no such right, title, interest or estate whatsoever. The defendant by his answer, disclaims having any right, title, claim or interest in or to the land described in the complaint, except to so much thereof as is included within certain described boundaries, and called the "Northern Light Mine." The boundaries mentioned are six courses, extending from a fixed starting point to the place of beginning, and having the following lengths: 268.6 feet, 956.3 feet, 263.3 feet, 249.5 feet, 995 feet, and 288.4 feet. He then denies that plaintiff is, or ever was, the owner, in the possession or entitled to the possession of any portion of the said Northern Light Mine; and avers that he is, and at all the times mentioned in the complaint was, the owner of, in the possession of, and entitled to the possession of, all that portion of the premises described in the complaint, which is included within the boundaries of the said Northern Light Mine. Wherefore he prays that plaintiff take nothing by his suit, and that he have judgment for his costs.

At the commencement of the trial, on demand of defendant, a jury was impaneled to try special issues, and the following questions were submitted, and answers returned: (1) "Which party (if either) was the first to discover a ledge, vein or lode bearing gold in the premises in question?" Answer: "Defendant." (2) "Did the plaintiff and his co-locators discover a ledge, vein or lode bearing gold, within the limits of their claim, before making their location?" Answer: "Yes." (3) "Did the defendant, Bell, at any time before February 28, 1895, mark his location on the ground so that its boundaries could be readily traced?" Answer: "No." (4) "Did the defendant, Bell, prior to the location of plaintiff, discover a ledge, vein or lode bearing gold within the limits of this claim?" Answer: "Yes."

After these answers were returned, and before judgment, defendant moved the court to disregard the second and third findings of the jury, upon the grounds: (1) That the second finding is inconsistent with the first and fourth findings, and is not sustained by the evidence; (2) that the third finding is not sustained by the evidence, but is contrary thereto. The court denied the motion, and thereupon made and filed its findings of the facts involved in the case as follows: That both plaintiff and defendant were native-born citizens of the United States, and as such qualified to locate and hold mining claims on the public mineral lands of the United States. "That on the twenty-seventh day of February, 1895, the plaintiff discovered what was called by him the Starlight quartz ledge, lode or vein bearing gold, within the limits of what is mentioned and described in the complaint as the 'Starlight Quartz Mine.' That on the twenty-eighth day of February, 1895, the plaintiff and his colocators located the said Starlight Quartz Mine by posting notices thereon, claiming fifteen hundred linear feet of the lode and surface ground as set out in complaint, and distinctly marked the said mining claim on the ground so that its boundaries could be readily traced, and entered into the possession thereof. That prior to the twenty-seventh day of February, 1895, the defendant discovered a quartz lode or vein bearing gold on the land within the limits of what is now called the 'Starlight Quartz Mine,' and which defendant called the 'Northern Light Mine,' which said lode or vein is presumed to be the same lode or vein thereafter discovered and located by the plaintiff. That between the tenth and fifteenth days of August, 1894, the defendant posted a notice on the southwesterly end of what he called the 'Northern Light Mine,' near what he presumed to be the ledge, claiming fifteen hundred linear feet of the ledge and six hundred feet in width on each side of the middle of the lode, but the defendant did not distinctly mark the said claim on the ground, so that its boundaries could be readily traced, either at the time of posting said notice or at any time prior to the twenty-eighth day of February, 1895, or before the plaintiff located the said Starlight Quartz Mine." And as conclusions of law the court found that on the twenty-eighth day of February, 1895, the plaintiff was, and ever since has been, the owner, in possession and entitled to the possession, of the quartz-mining

claim described in the complaint; that the adverse claim of defendant in and to the said land and premises was without any right whatever; and that plaintiff was entitled to have his claim and right to the said premises quieted as against the defendant. A judgment and decree was accordingly entered as prayed for, from which, and from an order denying his motion for a new trial, defendant appeals.

The land in controversy is public mineral land of the United States, and both parties claim it under locations made by them, or attempted to be made, under and in accordance with the provisions of the United States statutes. No local rules or customs were shown to exist, and the principal question is, Was the defendant's location, which was prior in time to plaintiff's, sufficient to meet the requirements of the law? The statute provides, among other things, that "no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located" (U. S. Rev. Stats., sec. 2320) ; and also that: "The location must be distinctly marked on the ground so that its boundaries can be readily traced. All records of mining claims hereafter made shall contain the name or names of the locators, the date of the location and such a description of the claim or claims located by reference to some natural object or permanent monument as will identify the claim": U. S. Rev. Stats., sec. 2324.

1. Appellant contends that the findings of the jury and court as to the discovery of the vein or lode by the plaintiff before making his location, and as to the failure of the defendant to distinctly mark his location on the ground so that its boundaries could be readily traced, were not justified by the evidence, and hence his motion for new trial should have been granted. Without reviewing and setting out the testimony bearing upon these questions, we deem it enough to say that the evidence introduced and relied upon by the plaintiff was, in our opinion, quite sufficient to justify and sustain the findings complained of. And, though this evidence conflicted with that introduced by defendant, the well-settled rule in such cases must control in this court. It should be noted, however, in this connection, that the notice of location posted and filed for record in the county recorder's office by defendant was not so drawn as to afford any assistance to one seeking to trace out the boundaries of the

location, since it stated that defendant had located and claimed "fifteen hundred linear feet along the course of this lead, lode or vein of mineral-bearing quartz, and six hundred feet in width on each side of the middle of said lead, lode or vein," etc., while the location, as described in the answer, was less than one thousand feet long and less than six hundred feet in width.

2. Appellant further contends that during the progress of the trial the court committed several errors of law which were prejudicial to his side of the case. The first point made under this head is that the court erred in refusing to disregard the second finding of the jury, upon the ground that it was inconsistent with the first and fourth findings. Waiving the question whether, under the issues raised by the answer, the verdict of the jury was merely advisory to the court, and could be adopted or disregarded at its pleasure, or whether it could only be set aside on motion for new trial, still we fail to see any irreconcilable inconsistency in the findings referred to. The fact that defendant "was the first to discover a ledge, vein or lode bearing gold on the premises in question," and that he made this discovery "prior to the location of plaintiff," was not inconsistent with the fact that plaintiff and his colocators discovered "a ledge, vein or lode bearing gold within the limits of their claim before making their location." Both parties may have discovered the same lode, but in different places; and the testimony tended to show that they did so discover it. Under the statute it can make no difference which party made the first discovery, so long as it was in fact made before plaintiff made his location. Besides, appellant was not aggrieved by the finding complained of, since, though he was the first to discover the lode, he failed to make a valid location thereon, and left it subject to location by any other competent person.

The next point is that the court erred in giving to the jury an instruction which reads as follows: "The jury are instructed by the court that the mining claim of the defendant, in order to be valid, must have been distinctly marked upon the ground so that its boundaries could be readily traced, on or before the twenty-eighth day of February, 1895. The law requires this marking of the claim upon the ground to be done in such a manner that any person of rea-

sonable intelligence may go upon the ground, and readily trace the claim out, and readily find the boundaries and limits of the claim without instructions, advice or information from anyone or thing other than the marking upon the ground, and it is not necessary or required that such a person shall have a copy of the notice of location or necessarily use it in the tracing the boundaries of the claim, but where such notice is posted upon the claim, and constitutes a part of the marking of such claim upon the ground, it may be used as a part of the means by which the boundaries of the claim can be traced; and if you believe from the evidence that the defendant prior to the twenty-eighth day of February, 1895, failed to so mark his claim upon the ground so that any person of reasonable intelligence could go upon the ground, either with or without a copy of the notice of location; and readily trace the claim out, and find its boundaries and limits, your verdict should be to the effect that his claim was not so marked on the ground that its boundaries could be readily traced.'' We see no error in the instruction as given. It seems to state the law applicable to the question in hand quite clearly and correctly.

The next point is that the court erred in overruling defendant's objection to the introduction in evidence of a copy of plaintiff's recorded notice of location, as a copy of the notice posted on the claim, upon the ground that the original should have been produced, or its loss or destruction shown. It was admitted by counsel for defendant that plaintiff's location was properly staked out, and it was proved that the notice was posted on the claim, and recorded. The statute provided only as to what ''all records of mining claims hereafter made shall contain,'' and, as no local rules or customs were shown to exist, it was not necessary to introduce or prove the posted notice. It was proper, however, to prove the recorded notice, and for that purpose the copy was offered and received; and in this there was clearly no error.

The next point is that the court erred in admitting certain evidence offered by the plaintiff in rebuttal. The evidence objected to tended to contradict to some extent the evidence introduced by defendant to show his prior discovery of gold in the ledge or lode in controversy. We think the evidence offered was admissible in rebuttal, and that the objection to it was properly overruled.

The next point is that the court erred in allowing plaintiff to introduce evidence for the purpose of impeaching Benjamin Bell, a witness for defendant. The witness had testified as to the discovery of gold in the Northern Light Mine, and the location thereof by defendant. A day or two later he was recalled, and asked by counsel for plaintiff if he did not, immediately after the adjournment of court upon that day, at a time and place named, make a certain statement to Mr. J. W. Bigelow, and answered, "No, sir." He was then asked if he did not, right away after the adjournment, make a certain statement to Mr. Willeford. To this last question counsel for defendant objected, upon the ground that it was irrelevant, immaterial and not in cross-examination, and was an attempt to impeach the witness in regard to an immaterial and collateral matter. The court overruled the objection, and the witness answered, "No, sir." Afterward, in rebuttal, plaintiff called Bigelow as a witness, and proved by him, without any objection or exception, so far as the record shows, that Bell did make the statement to him which he had denied having made. In all this we see no material error. There was no attempt to prove that Bell did not answer truly as to the statement which it was assumed he had made to Willeford, and, if the evidence sought to be elicited as to the statement made by him to Bigelow was deemed inadmissible, it should have been objected to at the time it was offered. No such objection having been made, the point that it was inadmissible cannot now be considered.

The other points raised and discussed by counsel do not require special notice. The judgment and order appealed from should be affirmed.

We concur: Searls, C.; Britt, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.